**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, Intervenor.**

**No. 87–1020.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 10, 1987.

Decided Dec. 24, 1987.

Gregory O'Duden, with whom Lois G. Williams, Washington, D.C., was on the brief, for petitioner.

Susan Berk, Atty., Federal Labor Relations Authority, of the Bar of the Court of Appeals of New York, pro hac vice by special leave of this Court, with whom Ruth E. Peters, Sol., William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Marc Richman, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for intervenor, Dept. of the Treasury, Bureau of Alcohol, Tobacco and Firearms.

Before EDWARDS, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case presents a narrow issue: did the questioning of one federal employee under disciplinary investigation, by another federal employee at management's behest, abridge the questioned employee's right under 5 U.S.C. § 7114(a)(2)(B) (1982) to have a union representative present during interrogation, even though the questioned employee was unaware that the questions were devised by management and that certain responses might result in disciplinary action or criminal penalties?

The Federal Labor Relations Authority ("FLRA") answered this question in the negative, on the ground that no "examination" had taken place for purposes of section 7114(a)(2)(B). We agree with the FLRA's conclusion, although we phrase the analysis somewhat differently. We hold that, although an examination occurred, the questioned employee had no right to union representation during interrogation because she could not reasonably have believed that her responses might lead to disciplinary action against her. Therefore, under the plain terms of the statute, no violation can be found. Accordingly, we affirm the FLRA's decision and deny the petition for review.

## I. BACKGROUND

Sania Franken and Colleen Then were both nonmanagement employees of the Bureau of Alcohol, Tobacco and Firearms ("BATF") in 1981. In March 1981, BATF received information suggesting that Franken had told the wife of a firearms merchant that her husband was under investigation. In order to verify that allegation, special agent Mugridge of BATF's Office of Internal Affairs asked Then on April 10, 1981, to telephone Franken and to

ask Franken some questions. Mugridge had written out the questions for Then. When Then hesitated, Mugridge told her that if she refused to make the telephone call, she might have to explain her uncooperativeness to her superiors. Mugridge gave Then fifteen minutes to reflect; Then then decided to make the call, which Mugridge arranged to tape in case it should produce incriminating evidence. Although Then testified before an Administrative Law Judge ("ALJ") that she cooperated because she thought that refusal to do so might jeopardize her job, *see* Transcript of Proceedings (Mar. 15, 1983), *reprinted in* Joint Appendix ("J.A.") 55, 75, there is no evidence that Mugridge threatened to do more than inform his supervisor, who might in turn contact Then's superiors. J.A. 188. It is also undisputed that Then never sought assistance from the National Treasury Employees Union ("NTEU"), the bargaining representative for employees in her work unit. J.A. 65. NTEU did not claim below, nor has it claimed on appeal, that Then was denied an opportunity to consult with a union representative or that she was improperly coerced into making the call.

Upon acceding to Mugridge's request, Then telephoned Franken and posed the questions she had been given. Franken did not know that Then had been asked to question her, nor did she know that the call was being monitored. Nevertheless, Franken denied compromising the investigation of the firearms dealer. On April 20, 1981, Franken reiterated her denial in the course of a formal interview with Mugridge. She was never charged with wrongdoing or disciplined in any way.

1. Section 7114(a)(2)(B) reads:
   An exclusive representative of an appropriate unit in an agency shall be given an opportunity to be represented at—
   any examination of an employee in the unit by a representative of the agency in connection with an investigation if—
   (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and
   (ii) the employee requests representation.

Prompted by NTEU's charge that BATF had committed unfair labor practices in conducting its investigation of Franken, the FLRA's General Counsel issued a complaint. The complaint alleged, first, that Mugridge's indirect questioning of Franken via Then without informing Franken that she was the target of a disciplinary investigation and that she had a statutory right to have a union representative present during questioning violated 5 U.S.C. § 7114(a)(2)(B) [1] and, therefore, constituted an unfair labor practice under 5 U.S.C. § 7116(a)(1). [2] Second, the complaint alleged that by forcing Then to help with this examination, BATF again flouted § 7116(a)(1) by interfering with Then's right under 5 U.S.C. § 7102 [3] to assist NTEU, her bargaining representative, by not advancing BATF's plan to examine Franken secretly.

Following a hearing, an ALJ concluded that both charges were correct. *Department of the Treasury, BATF, Southeast Regional Office, Atlanta, Ga.*, No. 4–CA–1138 (Oct. 21, 1983), *reprinted in* 24 F.L.R.A. 526 (1986). The ALJ recommended an order directing BATF to cease and desist from indirect questioning of the sort it employed in Franken's case and to cease and desist from the coercive enlistment of investigatory assistance. In addition, the recommended order would have required BATF to post notices of the cease-and-desist order in BATF's Jacksonville office. The ALJ declined to order the removal of material associated with Franken's examination from her personnel records because it was largely exculpatory and because he lacked authority to order the removal of incriminatory material obtained in other ways.

2. Section 7116(a)(1) states that "it shall be an unfair labor practice for an agency to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter."

3. Section 7102 reads in relevant part:
   Each employee shall have the right to form, join, or assist any labor organization ... freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right.

Both NTEU and BATF filed exceptions to the ALJ's findings and recommendations. NTEU desired that notices be posted over a larger geographical area; BATF contested the ALJ's determination that it had committed unfair labor practices.

Upon review, the FLRA agreed with BATF. *Department of the Treasury, BATF, Southeast Regional Office, Atlanta, Ga.,* 24 F.L.R.A. 521 (1986). In reasoning that no "examination" had taken place for purposes of 5 U.S.C. § 7114(a)(2)(B), the FLRA noted that five salient features of a recent case in which the FLRA had held that the Internal Revenue Service had not committed an unfair labor practice by secretly monitoring a telephone conversation between an IRS agent and a taxpayer were also present in this case. *See Department of the Treasury, IRS, Jacksonville Dist. ("Jacksonville"),* 23 F.L.R.A. 876 (1986). With respect to Franken's questioning, the FLRA found that:

(1) there was no direct questioning or examination of the employee by agency management, (2) management's involvement was limited to monitoring the conversation, (3) the employee was unaware that the questions and his answers were monitored, (4) the employee did not feel compelled to answer the questions, and (5) management played a "passive role" in the conversation.

24 F.L.R.A. at 523.

Unlike the situation in *Jacksonville,* the questions put to Franken were supplied by the agency and posed by a nonmanagement employee of the agency rather than by a private citizen; however, the FLRA considered these differences irrelevant because they did not lead to enhanced pressure on Franken to respond to the agency's queries. The FLRA also explained that "the presence of a union representative" would have been "utterly incongruous with the surreptitious nature of the agency's

surveillance activities." 24 F.L.R.A. at 523. A requirement that covert investigations of this kind be prohibited would, the FLRA said, interfere with BATF's right under section 7106(a)(1) to determine its internal security practices. 24 F.L.R.A. at 524. Finding nothing in the legislative history of section 7114(a)(2)(B) to support the claim that "examination" should be construed so broadly as to encompass the questioning of Franken, the FLRA concluded that no "examination" had occurred. Accordingly, it also rejected NTEU's claim that Then's right to aid the union had been transgressed, since the union had no right to be present when Franken was questioned. NTEU appeals these findings pursuant to 5 U.S.C. § 7123(a).

## II. ANALYSIS

In order to prevail, NTEU must establish five points: (1) that there was an examination (2) of an employee (3) by a representative of the agency employing her (4) in connection with an investigation, (5) such that the employee reasonably believed that the examination might result in the agency's taking disciplinary action against her. The second and fourth points do not admit of argument. Franken was clearly a BATF employee who was the subject of a disciplinary investigation. The FLRA determined, however, that no examination took place. We think the FLRA misstated its conclusion by conflating the first and fifth points above in defining "examination." BATF did indeed examine Franken. The five criteria set forth in *Jacksonville* bear not on the meaning of "examination," but rather on whether management conducted the examination and whether the employee could reasonably have feared punishment as a result of her replies. Nevertheless, we uphold the FLRA's decision and deny NTEU's petition for review.[4]

---

4. Although couched in different terms, our analysis does not so differ from that of the FLRA as to run afoul of the admonition that agency action "be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines v. United States,* 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d

207 (1962) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). In concluding "that the monitoring of the conversation did not constitute an '*examination*' within the meaning of section 7114(a)(2)(B),'" 24 F.L.R.A. at 523 (emphasis added), the FLRA seems in effect to subsume within

We find that, in the circumstances of this case, the employee had no reason to believe that she might be penalized in consequence of her replies. We therefore need not reach the question whether Then was acting as a representative of BATF.

### A. Did BATF Conduct an "Examination" of Franken?

The word "examination" is not defined in section 7114(a)(2)(B), nor does it find elucidation elsewhere in the Federal Service Labor–Management Relations Statute (the "Statute"), 5 U.S.C. §§ 7101–7135 (1982). The legislative history of this provision is equally barren of guidance. The original version of section 7114(a)(2)(B), contained in an amendment offered by Representative Udall and adopted by the House, used the term "investigatory interview" instead of "examination." 124 CONG.REC. 29,246 (1978), *reprinted in* SUBCOMMITTEE ON POSTAL PERSONNEL AND MODERNIZATION OF THE HOUSE COMM. ON POST OFFICE AND CIVIL SERVICE, 96TH CONG., 1ST SESS., LEGISLATIVE HISTORY OF THE FEDERAL SERVICE LABOR-MANAGEMENT RELATIONS STATUTE, TITLE VII OF THE CIVIL SERVICE REFORM ACT OF 1978, at 914 (Comm. Print No. 96–7) (1979) ("LEGIS.HIST."). The House–Senate Conference Committee altered Representative Udall's proposal, substituting "examination" for "investigatory interview." The Conference Committee Report suggests, however, that the change was deemed inconsequential, for three reasons. First, the Conferees used the terms "investigatory interview" and "examination" interchangeably in their report. *See* H.R. REP. No. 1717, 95th Cong., 2d Sess. 155–56 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, *reprinted in* LEGIS.HIST. at 823–24. Second,

they retained the phrase "in connection with an investigation" in the text of section 7114(a)(2)(B). Third, the Conferees did not think this single change in wording worthy of comment. Hence, the legislative history supplies no reason to infer that the term "examination" was meant to limit the application of section 7114(a)(2)(B) to formal interrogations of an employee by management representatives.

The fact that section 7114(a)(2)(B) was intended to ensure federal employees rights comparable to those enjoyed by their private sector counterparts pursuant to *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), *see* 124 CONG.REC. 29,184 (1978), *reprinted in* LEGIS.HIST. at 926, also does not suggest that "examination" should be construed more narrowly for purposes of this provision than the term is used in everyday speech. The Court in *Weingarten* used the term "investigatory interview," *see* 420 U.S. at 252, 253, 259, 260, 262, 264, 267, 95 S.Ct. at 961, 964, 965, 966, 967, 968, and sometimes it referred merely to an "interview." *See* 420 U.S. at 256, 257, 258, 261, 263, 95 S.Ct. at 963, 964, 965, 966. Both of these terms refer to forms of "examination," and neither is literally limited to a formal interrogation by a member of management. "Examination" involves questioning to secure information; obviously, it can be done in a number of different ways by a variety of different people. In limiting the reach of *Weingarten*-type protection, Congress did not confine the definition of "examination;" rather, the legislature, quite sensibly, simply restricted the protection of section 7114(a)(2)(B) to an "employee who reasonably believes that the examination may result in disciplinary action." [5]

the rubric "examination" all five elements that together trigger the right to union counsel upon request. Our opinion treats these points separately and therefore concludes that the proper terms of analysis relate to the employee's apprehension of discipline and not to the existence of an examination, but we believe that the substantive thrust of our reasoning accords with that of the FLRA. *Compare* note 5 *and* Part II.B. *infra with* 24 F.L.R.A. at 523–24 *and Jacksonville*, 23 F.L.R.A. at 879–80. *See Bowman Transp. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) ("we will

uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

**5.** None of the FLRA's five criteria for whether an "examination" occurred, *see* pp. 5–6 *supra*, appear relevant to that determination, although they *do* seem relevant to ascertaining whether (a) there was an examination *by management*, which (b) *an employee might reasonably have believed could result in disciplinary action.* Whether questioning was direct, whether management merely monitored the conversation, and whether management played a "pas-

We see no reason to give the term "examination" a more constricted compass than its colloquial definition possesses. Had the questions Then put to Franken been asked instead by a supervisor in a face-to-face encounter, there is no question that they would have constituted an examination. The fact that they were ultimately posed by someone other than the person Franken believed was posing them did not transform the character of the sequence of questions she was asked. Franken was plainly examined.

### B. Could Franken Reasonably Have Feared Disciplinary Action?

Franken's ignorance of management's role in drafting the questions and initiating her examination is, however, significant in determining whether BATF committed an unfair labor practice. Section 7114(a)(2)(B) provides a right to union representation only when an employee reasonably fears that her responses may cause management to take disciplinary action against her. The applicable standard is an objective one; "[t]he relevant inquiry is whether, in light of the *external* evidence, a reasonable person would decide that disciplinary action might result from the examination." *AFGE, Local 2544 v. FLRA*, 779 F.2d 719, 724 (D.C.Cir.1985) (as amended Feb. 14, 1986). Because Franken was totally unaware that a special investigator had formulated the questions she was asked and that he was tape-recording her replies, she could not have had a reasonable apprehension of punishment. Franken therefore lacked a right to union representation.

Although we would be constrained to reach this conclusion by the unambiguous language of the Statute even if the Supreme Court's decision in *Weingarten* arguably supported a contrary result, we note that the Court's decision is not at odds with the conclusion we reach here. The

focus in *Weingarten* was on a "confrontation," 420 U.S. at 260, 95 S.Ct. at 965, between management and an employee facing possible discipline who "may be too fearful or inarticulate to relate accurately the incident being investigated." 420 U.S. at 263, 95 S.Ct. at 966. In *Weingarten*, management officials took aside an employee who was suspected of theft and questioned her, without affording her an opportunity to confer with a union representative or to have a representative present during her examination. The National Labor Relations Board concluded that management had thereby committed an unfair labor practice. The Court upheld the Board's ruling because it would likely help to eliminate the inequality inherent in a formal interrogation by management of a physically and fraternally isolated employee:

> Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the Act was designed to eliminate, and bars recourse to the safeguards the Act provided "to redress the perceived imbalance of economic power between labor and management."

420 U.S. at 262, 95 S.Ct. at 966 (quoting *American Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 316, 85 S.Ct. 955, 966, 13 L.Ed.2d 855 (1965)). The dangers the Court addressed in *Weingarten*, however, were not present in Franken's questioning, because she had no reason to fear disciplinary sanctions and did not experience the isolation and intimidation that the Court sought to redress in *Weingarten*. The Court's express limitation of its holding to situations where an employee reasonably fears that her replies may result in disciplinary action is therefore consistent with the language of section 7114(a)(2)(B) and BATF's investigatory techniques in this case.

---

sive role" in the conversation all bear on the question whether an examination was conducted, as the Statute requires, by "a representative of the agency;" but none of these factors seems relevant to whether an "examination" took place. Likewise, whether the employee was aware that his responses were being monitored

and whether he felt compelled to reply are plainly pertinent to whether he had reason to fear disciplinary action in consequence of his answers; but they do not speak to the preliminary question whether the employee was examined.

Whether Congress consciously declined to forbid techniques of the sort employed by BATF in drafting section 7114(a)(2)(B), or whether the Statute's failure to proscribe them resulted from inadvertence or oversight, is far from clear. Nevertheless, however accidental its origin, we are obliged to apply a statutory provision strictly where, as here, it admits of but one interpretation upon a fair reading and the legislative history does not show this reading to be erroneous. It remains for Congress to repair the Statute if it deems the results in this and similar cases to be untoward. We do not opine on whether a rule permitting such results is wise from the perspective of federal labor policy. Nor do we offer an opinion on the prudence or moral propriety of BATF's actions. We merely hold that, because section 7114(a)(2)(B) explicitly conditions an employee's right to union representation on the employee's reasonable fear of discipline, BATF did not commit an unfair labor practice by not informing Franken of her alleged right to union representation or by not allowing her to exercise it.[6]

### III. Conclusion

For the foregoing reasons, we deny NTEU's petition for review.

*So Ordered.*

---

**6.** We also uphold the FLRA's finding that BATF did not commit an unfair labor practice by enlisting Then's help in its covert questioning of Franken. Because Franken had no right to NTEU's counsel when Then questioned her, Then's right to assist NTEU by not participating in an unfair labor practice directed at a fellow union member was in no way impaired. In addition, we note that Then never expressed a desire to contact NTEU after she had been asked to question Franken, nor did she attempt to invoke her rights under section 7102.